UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION  LEXINGTON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CRIMINAL NO. 5:24-120-KKC-MAS-1** |
| Plaintiff, | |
| v. | **OPINION & ORDER** |
| **VICTORIAN VALDIMAR HARDAWAY,** | |
| Defendant. | |

This matter is before the Court on the defendant's motion to suppress and for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). (DE 25.) For the following reasons, the motion is denied.

I. Background

Victorian Hardaway was indicted in December 2024 on charges for (1) possession with intent to distribute 40 grams or more of a mixture or substance containing fentanyl; (2) being a convicted felon in possession of a firearm; and (3) possession of a firearm in furtherance of a drug trafficking crime. (DE 1.) These charges are each alleged to have occurred on January 17, 2024—the date on which law enforcement executed a warrant to search Hardaway's person, his Chrysler 300, and an apartment at 1101 Beaumont Centre Lane #28206, Lexington, KY (the "Beaumont Apartment"). During the search, officers recovered 299.4 grams of fentanyl, 9.1 grams of methamphetamine, 4.3 grams of Percocet, three firearms, digital scales, $5,984.00 cash, and two cellphones.

A day prior, on January 16th, Detective Todd Hart filed a search warrant affidavit with a Fayette County District Judge. Hardaway argues that Detective Hart's affidavit included stale and potentially false information.

1

## II.     *Franks* Hearing

The Court begins with Hardaway's request for a *Franks* hearing. Under *Franks*, a defendant is entitled to a hearing on the veracity of a search warrant affidavit "if he makes specific allegations of deliberate falsehood or reckless disregard for the truth on the part of the affiant [ ] and supports the[ ] allegations with an offer of proof." *United States v. Marlowe*, 993 F.2d 1548 (6th Cir. 1993). "The offer of proof," a defendant must proffer "must consist of affidavits or 'otherwise reliable statements' that support the contention that the affiant deliberately or recklessly falsified information in the affidavit." *Id.* at 1548 (quoting *Franks*, 438 U.S. at 171). "If the defendant does not produce such sworn or reliable statements, their absence must be satisfactorily explained." *Id.* In evaluating search warrant affidavits, courts begin with a "presumption of validity," and "[a] defendant challenging the validity of a search warrant's affidavit bears a heavy burden." *Franks*, 438 U.S. at 171; *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019) (noting that a defendant must "make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement," to be entitled to a *Franks* hearing).

Here, Hardaway alleges two portions of Detective Hart's affidavit include false statements. First, Hardaway questions the validity of statements on the fourth page of the affidavit. Hardaway challenges statements on the fourth page because a box at the bottom of the second page, entitled "CONTINUED ON ATTACHMENT", is not marked, and the narrative on the third page otherwise comes to a natural end with no reference to any additional page. The fourth page, however, is clearly titled "ATTACHMENT NUMBER ONE," and discusses the same investigation referenced throughout the rest of the affidavit. On these facts, Hardaway suggests that every statement on the fourth page is unreliable.

2

A typographical error such as the one Hardaway takes issue with does not show that Detective Hart either intentionally or recklessly included false information on the fourth page. Rather, such a technical error is merely demonstrative of the reality that search warrant applications "are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *United States v. Brooks*, 594 F.3d 488, 491 (6th Cir. 2010). Ultimately, "[w]hat matters is the information contained in the affidavit," and the typographical error Hardaway cites does not establish a substantial preliminary showing that Detective Hart intentionally or recklessly included false information on the fourth page. *Id.*; *see also United States v. Hill*, 705 F. Supp. 3d 811, 819–20 (E.D. Mich. 2023) (denying request for a *Franks* hearing where the defendant offered "little other than minor typographical errors to support his accusations of falsehoods[.]").

Second, Hardaway argues that Detective Hart fabricated the existence of a cooperating individual ("CI") in his affidavit. Hardaway bases this accusation on an apparent false piece of information from the CI that Detective Hart included in the affidavit. In the affidavit, Detective Hart noted that the defendant was known to the CI as "Vic." Hardaway, whose first name is Victorian, "denies that he goes by the nickname 'Vic' and therefore questions the validity that any confidential informant exists." (DE 25 at 2.) Hardaway provides no explanation, however, as to how the inclusion of an apparently false piece of information provided by the CI demands the conclusion that Detective Hart must have therefore fabricated the existence of the CI. Moreover, Hardaway fails to make an offer of proof or explain the absence of proof to support this accusation. *See Marlowe*, 993 F.2d at 1548. Accordingly, without more, the Court finds that Hardaway fails to demonstrate that he is entitled to a *Franks* hearing. *Id.* (affirming denial of *Franks* hearing where the defendant accused an officer of fabricating a confidential informant but failed to produce "affidavits from other persons involved in the case to prove that [the affiant] was lying.").

**III.    Motion to Suppress**

Because Hardaway fails to carry his heavy burden to challenge the search warrant affidavit, the "presumption of validity," applies. *Franks*, 438 U.S. at 171. Remaining, then, is Hardaway's argument that the search warrant was defectively issued upon stale information. As a threshold issue, Hardaway argues that information in the affidavit concerning two controlled buys cannot be used in the staleness analysis because Detective Hart failed to identify a time period during which those buys took place. Hardaway suggests, without citing any authority, that Detective Hart was required to provide a date or date range on which the controlled buys occurred. For the following reasons, this argument fails as a matter of law.

Put plainly, the Sixth Circuit does not require a search warrant affidavit to include the temporal specificity which Hardaway suggests is necessary. Rather, an affiant need only include "some temporal reference," to when a controlled buy occurred for it to be properly considered in the probable cause determination. *United States v. Hython*, 443 F.3d 480, 486 (6th Cir. 2006).

Here, when read in a common-sense manner, Detective Hart's affidavit sufficiently includes a temporal reference to when the controlled buys occurred. *Illinois v. Gates*, 462 U.S. 213, 238 (1983) ("the task of the issuing Magistrate is simply to make a practical, common-sense decision[.]"). The affidavit was signed and dated January 16, 2024. The first controlled buy that Hardaway takes issue with is described in the affidavit as having occurred "[w]ithin the past several weeks." The second controlled buy is described as having occurred "[w]ithin the last 48 hours." Temporal references of this nature have uniformly been approved by courts. *See United States v. Harris*, 403 U.S. 573, 579 n.* (1971) ("within the past 2 weeks"); *United States v. Pinson*, 321 F.3d 558, 561–65 (6th Cir. 2003) ("[w]ithin the last 72 hours"); *United States v. Rodriguez-Suazo*, 346 F.3d 637, 646–47 (6th Cir. 2003) ("within the past forty-eight hours"); *United States v. Johnson*, 351 F.3d 254, 258–60 (6th Cir. 2003) ("within

4

the past 72 hours"); *United States v. Jackson*, 470 F.3d 299, 303, 308 (6th Cir. 2006) ("[w]ithin the past three days"). Accordingly, the Court breaks no new ground in finding that the affidavit here includes a sufficient temporal reference to when the controlled buys occurred.

Properly framed, then, the Court will consider Hardaway's staleness challenge. "Stale information cannot be used in a probable cause determination." *United States v. Gillman*, 432 F. App'x 513, 515 (6th Cir. 2011) (citation omitted). Whether information in an affidavit is stale depends on case specific facts and consideration of the following factors: "(1) whether the crime is transitory or continuing; (2) whether the criminal is nomadic or stationary; (3) whether the thing to be seized is perishable or durable; and (4) whether the place to be searched is a forum of convenience or a secure operational base." *United States v. Powell*, 603 F. App'x 475, 478 (6th Cir. 2015).

For the first factor, courts assess whether the alleged crime was a "chance encounter in the night" or ongoing. *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006). Whether the crime of drug trafficking was ongoing "exists upon a continuum ranging from an individual who effectuates the occasional sale," to an "established and notorious drug den." *Hython*, 443 F.3d at 485. When facts in the affidavit suggest that the crime involved an ongoing drug enterprise, the affidavit's information is seldom stale. *See, e.g.*, *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001) (stating that "[e]vidence of ongoing criminal activity will generally defeat a claim of staleness," and holding a twenty-three-month-old controlled drug buy from ongoing enterprise not stale).

Here, Detective Hart's affidavit details ongoing drug trafficking, not a chance encounter. The affidavit notes that law enforcement first received information about Hardaway's alleged drug trafficking activity in August 2023. The affidavit then details subsequent surveillance of Hardaway at the Beaumont Apartment, providing added detail with respect to a surveillance initiative in December 2023 that resulted in a trash pull that

5

revealed certain drug paraphernalia. Finally, the affidavit describes two controlled buys of narcotics from Hardaway which occurred "[w]ithin the past several weeks," and "[w]ithin the last 48 hours," prior to Detective Hart submitting the search warrant application in January 2024. Taken together, this narrative describes ongoing drug activity. The first factor thus weighs in favor of finding that information in the affidavit was not stale.

For the second factor, courts ask whether the defendant was "nomadic or entrenched" based on the affidavit's information. *Abboud*, 438 F.3d at 572. If the defendant was entrenched, the affidavit's information was likely not stale. *Id*. at 573. A defendant was entrenched when there is little "indication that [they] moved from place to place" or lacked consistent contact with the area embracing the searched place. *Id*.

Here, as described in the affidavit, Hardaway was "entrenched." All details point to Hardaway's continued contact with the Beaumont Apartment and the Chrysler 300 from August 2023 through January 2024. This factor thus weighs in favor of finding that probable cause was not based on stale information.

For the third factor, courts analyze whether the items to be seized were "perishable and easily transferrable or of enduring utility to its holder." *Abboud*, 438 F.3d at 573. In drug trafficking cases, "where an affidavit indicates that someone keeps a ready supply of [drugs] in his apartment," it "shows that [drugs are] likely there now." *United States v. Church*, 823 F.3d 351, 356 (6th Cir. 2016).

Here, Detective Hart's affidavit indicates that Hardaway kept a ready supply of drugs either on his person, in the Beaumont Apartment, or in his Chrysler 300. Hardaway's maintenance of a ready supply is made clear by observations made by detectives during the execution of the controlled buys. During the controlled buy occurring only two days before the search warrant was issued, for example, officers surveilled the Beaumont Apartment and observed the following:

> The CI contacted Hardaway on his cell phone . . . Only moments after the call was made to him, detectives observed him emerge from his apartment and proceed directly to his vehicle. Detectives then followed him away. Hardaway drove directly to the pre-designated meet location . . . [where he] provided the CI with a baggie he claimed contained narcotics.

Based on this narrative, the affidavit indicates that Hardaway kept a ready supply of drugs either on his person, in the Beaumont Apartment, or in his Chrysler 300. This factor thus weighs in favor of finding that probable cause was not based on stale information.

For the fourth factor, courts evaluate whether the searched property was a "mere criminal forum of convenience or secure operational base." *Abboud*, 438 F.3d at 573. A place is considered a "secure operational base" when the affidavit contains information that a defendant has used that property on multiple occasions for criminal activities. *United States v. Sinclair*, 631 F. App'x 344, 348 (6th Cir. 2015).

Here, the affidavit establishes that Hardaway used the Beaumont Apartment and his Chrysler 300 on multiple occasions for drug related activities. Most notably, the two controlled buys described in the affidavit involved Hardaway leaving the Beaumont Apartment, getting in the Chrysler 300, and driving directly to pre-designated meet locations. This factor thus weighs in favor of finding that probable cause was not based on stale information.

In sum, each of the staleness factors weigh in favor of finding that the information in Detective Hart's affidavit was not stale. Accordingly, the affidavit established probable cause.

**IV.   Conclusion**

For the foregoing reasons, the Court hereby ORDERS that the defendant's motion to suppress and for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) (DE 25) is DENIED.

This 9th day of June, 2025.

                                          KAREN K. CALDWELL
                                        UNITED STATES DISTRICT JUDGE
                                        EASTERN DISTRICT OF KENTUCKY